In the

# United States Court of Appeals

### For the Seventh Circuit

Nos. 08-4317, 09-4009 & 10-1456

IN RE:

DUSTIN JOHN BUSSON-SOKOLIK,

*Debtor.*

DUSTIN BUSSON-SOKOLIK and CHOMI PRAG,

*Appellants,*

*v.*

MILWAUKEE SCHOOL OF ENGINEERING,

*Appellee.*

Appeals from the United States District Court
for the Eastern District of Wisconsin.
No. 2:07-cv-00801—**Charles N. Clevert, Jr.,** *Chief Judge.*

ARGUED SEPTEMBER 14, 2010—DECIDED FEBRUARY 10, 2011

Before BAUER, FLAUM and HAMILTON, *Circuit Judges*.

BAUER, *Circuit Judge.* This case comes to us as a direct appeal from the Eastern District of Wisconsin's decision to affirm findings of the United States Bankruptcy Court for the Eastern District of Wisconsin. The courts

below found: (1) that a $3,000 student loan which Dustin Busson-Sokolik received from the Milwaukee School of Engineering ("MSOE") in 1999 was a non-dischargeable debt under the United States Bankruptcy Code, and (2) that the school was entitled to collection costs and attorney's fees in connection with the bankruptcy proceedings pursuant to the promissory note for the loan signed by Busson-Sokolik. The district court also: (1) denied a motion for sanctions against the school, and (2) imposed sanctions against Busson-Sokolik and his attorney, Chomi Prag. Busson-Sokolik and Prag appeal each of these determinations. After reviewing the district court's application of the Bankruptcy Code de novo and the underlying factual findings in the case for clear error, we affirm. As to the district court's im-position of sanctions against Busson-Sokolik and Prag, while we do not find any abuse of discretion in the court's decision to impose sanctions in this case, we do find the amount of the sanctions assessed to be exces-sive and therefore hold that the sanctions be reduced by half.

## I. BACKGROUND

Busson-Sokolik was a student at MSOE from September 1999 until May 2000. On October 29, 1999, Busson-Sokolik signed a promissory note with MSOE in the amount of $3,000, agreeing in relevant part as follows:

> I promise to pay the school, or a subsequent holder of the Promissory Note, the sum of amount(s) ad-

vanced to me under the terms of this Note, plus interest and other fees which may become due as provided in this Note. I promise to pay all reasonable collection costs, including attorney fees and other charges, necessary for the collection of any amount not paid when due . . . My signature certifies I have read, understand, and agree to the terms and conditions of this Promissory Note.

MSOE sued Busson-Sokolik in a Racine County, Wisconsin state court in April 2005 to recover unpaid sums under the loan agreement and obtained a default judgment of $5,909.63. In June 2005, Busson-Sokolik initiated a Chapter 13 bankruptcy proceeding, which was later converted to a Chapter 7 proceeding, in May 2006. On his bankruptcy petition, he listed MSOE as a creditor. In August 2006, Busson-Sokolik filed an adversary complaint against MSOE to determine the dischargeability of his debt to MSOE. The bankruptcy court found that the debt was non-dischargeable and found that Busson-Sokolik owed MSOE $16,248.78, an amount that included costs and attorney's fees.

Busson-Sokolik appealed the bankruptcy court's decision to the district court. Lengthy delays in filing ensued and a series of motions alleging misconduct on both sides were filed. Busson-Sokolik filed a motion for sanctions under Fed. R. Bankr. P. 9011 based on alleged false statements in MSOE's brief and MSOE moved to strike portions of Busson-Sokolik's reply brief, claiming that it contained arguments that were never raised in the opening brief or in the bankruptcy court. MSOE also

moved for costs and fees under Fed. R. Bankr. P. 8020, which permits recovery of such costs and fees when a party has filed a frivolous appeal.

The district court judge denied Busson-Sokolik's motion for sanctions, but granted MSOE's motion for costs and fees under Fed. R. Bankr. P. 8020, finding that Busson-Sokolik's appeal was frivolous. He also granted MSOE's motion to strike arguments in Busson-Sokolik's reply brief not previously raised, finding those arguments waived. Finally, he affirmed the bankruptcy court's judgment and awarded $80,290.15 to MSOE, specifying that Busson-Sokolik and his attorney were jointly and severally liable for $61,942.50 of the judgment, and that Busson-Sokolik was solely liable for the remaining $18,347.65.

Busson-Sokolik and attorney Prag have timely appealed to this court.

## II. DISCUSSION

### A. The Dischargeability of Busson-Sokolik's Loan from the Milwaukee School of Engineering

A key issue is whether the MSOE loan constitutes a non-dischargeable debt under 11 U.S.C. § 523(a)(8). We review questions of law pertaining to the Bankruptcy Code de novo and the factual determinations underlying the lower courts' conclusions for clear error. *See Wiese v. Cmty Bank of Cent. Wis.,* 552 F.3d 584, 588 (7th Cir. 2009); *Mungo v. Taylor,* 355 F.3d 969, 974 (7th Cir. 2004).

Section 523(a)(8) creates exceptions to the general discharge of a debtor's financial obligations in bankruptcy under 11 U.S.C. § 727. Under § 523(a)(8)(A), an individual debtor is not discharged from a debt for "(i) an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or (ii) an obligation to repay funds received as an educational benefit, scholarship or stipend," unless excepting such debt from discharge would impose undue hardship on the debtor and the debtor's dependents. The bankruptcy court and the district court each found that the MSOE loan was non-dischargeable under § 523(a)(8)(A). We agree.

We note at the outset the parties' failure to explicitly identify whether the applicable framework for the court's analysis should be § 523(a)(8)(A)(i) or (ii). Though the parties refer to § 523(a)(8)(A) generally, the analysis below and in the parties' briefing before this court tracks § 523(a)(8)(A)(i). So, section 523(a)(8)(A)(i) will be our framework.

It is undisputed that MSOE is a § 501(c)(3) non-profit institution. While it seems clear to us that the funds were furnished as part of a loan program, Busson-Sokolik disputes that the funds transferred constituted a loan. We do not find his argument compelling. For there to be a loan, there must be "(i) a contract, whereby (ii) one party transfers a defined quantity of money, goods or services, to another, and (iii) the other party agrees to pay for the sum or items transferred at a later date." *In re*

*Chambers,* 348 F.3d 650, 657 (7th Cir. 2003). The October 1999 promissory note evinces a contract for the transfer of $3,000 to be repaid at a later date. Since the Bankruptcy Court made a reliable factual finding that the $3,000 was transferred to Busson-Sokolik's student account on November 9, 1999, each of the three elements of a loan are present.[1]

Busson-Sokolik next challenges whether the loan can properly be considered "educational," as required to bring the loan within § 523(a)(8)(A). While some courts look to the use of the funds received to determine whether a loan is educational, we adopt the approach taken by the Fifth Circuit in *In re Murphy,* 282 F.3d 868 (5th Cir. 2002). In so doing, we hold that it is the purpose of a loan which determines whether it is "educational." This approach seems most consistent with the language of § 523(a)(8)(A). It also aligns with the

---

[1] Busson-Sokolik claims that "no funds changed hands" between him and MSOE, but since he does not dispute that his student account was credited with the loan money, this argument is unfounded. If the loan money was transferred to the student's account, it became available for his use, much like a bank deposit. While the facts indicate that a credit on Busson-Sokolik's student account was later refunded to his mother, this is irrelevant to the question of whether a loan was made to Busson-Sokolik in the first place. Finding no clear error on the question of whether the funds were in fact transferred to Busson-Sokolik and no defects in the formation of a valid contract between the parties, we affirm the finding that the sum MSOE transferred to Busson-Sokolik was a loan.

broader goal of protecting lenders against debtors who divert educational funds toward other uses. In our view, adopting a "use" test would be problematic. Such a test would enable students who abuse funds intended for their education to receive the benefit of a discharge, while those who use the loan proceeds as intended would "retain the burden of paying them even after a chapter 7 discharge." *Murphy*, 282 F.3d at 873. The "purpose" test avoids this potential problem by refocusing the inquiry on the nature and character of the loan. For example, rather than trying to determine whether a computer purchased with loan money was used for schoolwork, personal use or some combination of both, we need only ask whether the lender's agreement with the borrower was predicated on the borrower being a student who needed financial support to get through school.

We find the following facts established below relevant to our inquiry into the purpose of the MSOE loan: (1) MSOE is a school; (2) the loan was part of a package that included scholarship and grant money toward completion of Busson-Sokolik's education at MSOE; (3) the promissory note for the loan was signed while Busson-Sokolik was a student at MSOE; (4) Busson-Sokolik had to be a student to be eligible for the loan he received from MSOE; and (5) the MSOE loan money was deposited into Busson-Sokolik's student account at MSOE, an account he presumably would not have had if he were not a student. Together these facts establish that the loan was part of a program specifically designed by the school to provide financial support to students

working to complete their education. Under the purpose driven test this court has adopted, there is no question that the loan was educational. As a result, we affirm the finding that 11 U.S.C. § 523(a)(8) bars Busson-Sokolik from discharging his debt to MSOE in bankruptcy because the debt resulted from an educational loan.

### B.  The Imposition of Collection Costs and Attorney's Fees

We now turn to Busson-Sokolik's argument that the bankruptcy court improperly allowed MSOE to recover costs and attorney's fees in this case.

Under the "American Rule," a litigant who prevails in a lawsuit is not ordinarily allowed to collect attorney's fees from the losing side. *See Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 247 (1975). However, this rule can be overcome by statute or by an enforceable contract with a provision regarding the allocation of attorney's fees. *See Travelers Cas. and Sur. Co. of America v. Pacific Gas and Elec. Co.,* 549 U.S. 443, 448 (2007).

Busson-Sokolik is correct that there was no statutory basis for an award of attorney's fees during the bankruptcy proceedings. However, the basis for the bankruptcy court's award of fees was contractual, not statutory. Under the promissory note for the MSOE loan, Busson-Sokolik agreed in writing to pay "all reasonable collection costs, including attorney's fees and other charges, necessary for the collection of any amount not paid when due." The bankruptcy court found a valid

contract existed between the parties that allowed MSOE to recover its fees based on the above-referenced language in the promissory note. This was not error. As the Supreme Court held in the *Travelers* case, "it remains true that an otherwise enforceable contract allocating attorney's fees (i.e. one that is enforceable under substantive, nonbankruptcy law) is allowable in bankruptcy except where the Bankruptcy Code provides otherwise." *Travelers,* 549 U.S. at 448. The fact that the fees were incurred litigating a bankruptcy case does not disallow MSOE's contract based claim for attorney's fees under *Travelers*. Since the promissory note was an enforceable contract, the fees were separately recoverable under the substantive law of contracts. Furthermore, Busson-Sokolik has not argued that any portion of the Bankruptcy Code specifically prohibits a court from awarding such fees under a contract theory. Finding no applicable exception in the Bankruptcy Code and no barrier to formation of a valid contract between MSOE and Busson-Sokolik, we affirm the award of costs and attorney's fees to MSOE pursuant to the terms of the promissory note.

In concluding our discussion of Busson-Sokolik's claim that fees were improperly awarded, we note his argument that the district court erred in striking portions of his reply brief that related to the merger doctrine. The district court found that Busson-Sokolik failed to raise the merger doctrine in his initial brief at the district court level. Chief Judge Clevert therefore held that Busson-Sokolik had waived any argument that the fee award was improper based on the merger doctrine. We agree with the district court that the

merger issues were waived and decline to apply an exception to waiver for the reasons set forth below.

Waiver occurs when an appellant attempts to raise an issue on appeal that was not adequately raised below. This court has held that when an issue was not raised in the bankruptcy court, a finding that the issue is waived at the district court level is "the correct result, since to find otherwise would permit a litigant simply to bypass the bankruptcy court." *Matter of Weber*, 25 F.3d 413, 415 (7th Cir. 1994). When asked at oral argument what her best effort was to raise the doctrine of merger before the bankruptcy court, Busson-Sokolik's counsel was unable to present any evidence that the issue was addressed in that court. Instead she indicated that her focus had been on the "American rule" and the lack of a statutory basis for awarding the fees. Since we find no evidence in the record or from Busson-Sokolik's counsel that the issue was raised in the bankruptcy court, we hold that any argument related to the merger doctrine was waived before it reached the district court.

Though it is within this court's discretion to find an exception to waiver and to consider an appellant's argument despite the appellant having waived it, the circumstances here hardly justify an exception. It is only under "exceptional circumstances" that we will hear an argument not adequately presented below. *Matter of Weber*, 25 F.3d at 416. Busson-Sokolik argues that we should consider the merger issue because "an award by the bankruptcy court of close to $9,000 in attorney's fees

to the Milwaukee School of Engineering based on an unenforceable contract is inherently unfair." As we have already discussed above, there was a valid contract between the parties which provided for the allocation of attorney's fees. Busson-Sokolik's characterization of the contract as "unenforceable" is therefore incorrect. As to the amount of the fees awarded, Busson-Sokolik's characterization is similarly misguided. Busson-Sokolik provides no support for his proposition that a $9,000 fee in a case such as this is inherently unreasonable or unfair. The bankruptcy court explicitly found that MSOE attorney's fees in the amount of $8,955 were reasonable. Absent any meaningful challenge to the award by Busson-Sokolik, we see no reason to disturb that finding.

The district court first became aware of Busson-Sokolik's merger argument in a reply brief. At that point the issue was waived twice over: first, because the argument was never raised in the bankruptcy court; and second, because arguments raised for the first time in a reply brief as opposed to the appellant's opening brief are deemed waived. *See, e.g., Nelson v. La Crosse County Dist. Atty.*, 301 F.3d 820, 836 (7th Cir. 2002); *James v. Sheahan*, 137 F.3d 1003, 1008 (7th Cir. 1998). The proper response to an argument improperly raised in such a brief is to move to strike the offending portion of the brief. *Cleveland v. Porca Co.*, 38 F.3d 289, 297 (7th Cir. 1994). MSOE timely filed a motion to strike the relevant portions of Busson-Sokolik's reply brief and the district court properly granted the motion. Since Busson-Sokolik has failed to show "exceptional circumstances" that would make this

case a favorable candidate for an exception to waiver, we decline to discuss the merits of those portions of his argument that relate to the merger doctrine.

### C.  The Parties' Motions for Sanctions

Finding no error in the district court's decision to grant MSOE's motion to strike portions of Busson-Sokolik's reply brief, we now turn to Busson-Sokolik's arguments that the district court erred (1) in denying his request for sanctions against MSOE under Fed. R. Bankr. P. 9011, and (2) in entering sanctions against him and his attorney, Chomi Prag, under Fed. R. Bankr. P. 8020. We review both determinations for abuse of discretion.[2] Such abuse occurs only when a court has acted contrary to the law or reached an unreasonable result. *In re Rimsat, Ltd.*, 212 F.3d 1039, 1046 (7th Cir. 2000).

---

[2] "Abuse of discretion" is the clear standard for evaluating a judge's decision to impose sanctions in a bankruptcy case. *See In re Rimsat, Ltd.*, 212 F.3d 1039, 1046 (7th Cir. 2000). While the standard for evaluating a judge's decision *not* to impose sanctions in a bankruptcy case is somewhat less clear, we adopt the Sixth Circuit's approach of using the "abuse of discretion" standard. *See In re Downs*, 103 F.3d 472, 480 (6th Cir. 1996) (holding that the applicable standard of review for evaluating a bankruptcy court's denial of Fed. R. Bankr. P. 9011 sanctions is "abuse of discretion" and noting similar approaches taken by the Ninth and Tenth Circuits).

### 1. Denial of Motion for Sanctions Against MSOE

An attorney is subject to sanctions under Fed. R. Bankr. P. 9011 when he submits a petition, pleading, written motion or other paper to the court that falls into one of four categories: (1) the document was submitted for an improper purpose (i.e., to harass one's adversary or to delay or drive up the costs of litigation); (2) the claims contained in the document are frivolous because they lack support under existing law; (3) the allegations contained in the document lack evidentiary support or are unlikely to have evidentiary support upon further investigation; or (4) the denials in the document are unwarranted based on the evidence. Fed. R. Bankr. P. 9011(b)(1)-(4). A motion for sanctions may be made under Fed. R. Bankr. P. 9011(c)(1)(A), as Busson-Sokolik did in this case, but any such motion is subject to a 21-day safe harbor provision.

Busson-Sokolik alleges sanctionable behavior on the part of MSOE based largely on statements contained in MSOE's brief before the district court. However, we need not reach the merits of any alleged violation on the part of MSOE because Busson-Sokolik undisputedly violated the safe harbor provision. On his own admission in the district court on October 31, 2008 and in his brief before this court, Busson-Sokolik concedes that he and his attorney did not provide MSOE with an adequate opportunity to withdraw the contested portions of its brief as required by the safe harbor provision of Fed. R. Bankr. P. 9011(c)(1)(A).

While we appreciate the candor with which Busson-Sokolik and his counsel have acknowledged their error

in failing to abide by the 21-day window, their forth-comingness is not sufficient to persuade us to revive an inquiry into the allegations raised. Though Busson-Sokolik correctly points out that courts are able to enter an order for sanctions on their own initiative, there is no requirement under Fed. R. Bankr. P. 9011(c)(1)(B) that a court act *sua sponte* to impose sanctions. Chief Judge Clevert denied Busson-Sokolik's motion for sanctions based on the safe harbor provision, a decision which we find comports with the law. To the extent that he was nevertheless empowered to impose sanctions under Fed. R. Bankr. P. 9011(c)(1)(B) and declined to do so, we choose not to disturb that judgment.

### 2.  Sanctions Imposed Against Busson-Sokolik and Chomi Prag

We now turn to the final issue for our review, namely whether the district court abused its discretion when it awarded sanctions for filing a frivolous appeal against Busson-Sokolik and his attorney, Chomi Prag.

The district court's imposition of sanctions was based on Fed. R. Bankr. P. 8020, which reads as follows:

> If a district court or bankruptcy appellate panel deter-mines that an appeal from an order, judgment, or decree of a bankruptcy judge is frivolous, it may, after a separately filed motion or notice from the district court or bankruptcy appellate panel and reasonable opportunity to respond, award just dam-ages and single or double costs to the appellee.

Chief Judge Clevert made several determinations in support of his finding that Busson-Sokolik's "appeal, **as litigated,** was frivolous." He summarized Busson-Sokolik and Prag's behavior throughout the course of the proceedings as follows:

> Motions were filed by appellant without any basis in the rules, deadlines were ignored, procedural requirements were dismissed as unnecessary, and duplicative filings and objections were made thereby making it impossible for appellee to minimize its costs in this action.

In his decision, Chief Judge Clevert referenced appellants' reliance on the merger doctrine despite having waived it, several misstatements in the record made by Prag, the Fed. R. Bankr. P. 9011 motion filed against MSOE, which he called "baseless," and the improper filing of an appeal to this court while district court proceedings were still pending.

We do not find that Chief Judge Clevert erred in imposing sanctions based on Fed. R. Bankr. P. 8020. Busson-Sokolik and his attorney were free to appeal their case to the district court, but ample evidence suggests that the *manner* in which the appeal was litigated bordered on the frivolous.[3] Courts consider a variety of factors in

---

[3] An appeal is frivolous "when the result is obvious or when the appellant's arguments are wholly without merit." *Flaherty v. Gas Research Inst.*, 31 F.3d 451, 459 (7th Cir. 1994). Even when genuinely appealable issues may exist, appellant's

(continued...)

deciding whether to impose sanctions under Fed. R. Bankr. P. 8020.[4] We are not convinced that Busson-Sokolik and his attorney appealed in bad faith. However, bad faith is only one of the many factors to be considered in determining whether sanctions are appropriate in any given case. We are also not convinced that the appeal itself (as contrasted with the manner in which the appeal was litigated) was frivolous. Because of appellants' procedural error in failing to abide by the safe harbor provision of Fed. R. Bankr. P. 9011, the courts have never reached the merits of that claim. And because courts are able to find an exception to waiver, the merger argument, though unsuccessful, did have some basis in law. Appellants' most egregious errors in this litigation appear to have been procedural ones.

---

[3] (...continued)
misconduct in arguing the appeal may render the appeal "frivolous as argued." *Dungaree Realty, Inc. v. United States,* 30 F.3d 122, 124 (Fed. Cir. 1994).

[4] For a comprehensive list of factors to be considered in evaluating a Fed. R. Bankr. P. 8020 motion, see *In re Maloni,* 282 B.R. 727, 734 (1st Cir. BAP 2002) ("Some of these factors are: bad faith on the part of the appellant; that the argument presented on appeal is meritless *in toto*; and, whether only part of the argument is frivolous. In addition, the court will consider whether appellant's argument: addresses the issues on appeal properly; fails to support the issues on appeal; fails to cite any authority; cites inapplicable authority; makes unsubstantiated factual assertions; makes bare legal conclusions; or, misrepresents the record.").

These errors were numerous and well documented. Therefore, given the stringent standard of abuse of discretion by which we are bound, we find that the act of awarding sanctions under Fed. R. Bankr. P. 8020 was a reasonable exercise of Chief Judge Clevert's discretion.

Notwithstanding the reasonableness of the decision to award sanctions and the reasonableness of MSOE's fees[5], we do not find that the full amount awarded in the district court was necessary to achieve the deterrent purposes of Fed. R. Bankr. P. 8020. As such, we exercise this court's own discretion to reduce the sanctions imposed by half. In so doing, we acknowledge that "[w]hile an award of attorney's fees may be necessary to fulfill the deterrent purposes of Rule 8020, the award should not subject Appellant to financial ruin." *In re Bonfield,* 2005 WL 2810702 at *1 (W.D. Wash.). The fees accrued in this case are sizeable and would be difficult for many litigants to pay. Recognizing that Busson-Sokolik is a student who has filed for bankruptcy and finding no evidence of bad faith on the part of Busson-Sokolik or his attorney, we conclude that a reduction in sanctions is warranted in this case.

---

[5] Of the district court award, $61,942.50 represents attorney's fees in connection with the appeal, which MSOE documented and submitted to Chief Judge Clevert on May 14, 2009. The statement includes work done from June 16, 2007 to May 14, 2009 billed at a rate of $225 per hour.

### III. CONCLUSION

Busson-Sokolik and his attorney, Chomi Prag, are jointly and severally liable to MSOE for $30,971.25, an amount which we find represents "just damages" under Fed. R. Bankr. P. 8020. Busson-Sokolik remains solely liable for $18,347.65, an amount which represents the July 11, 2007 judgment on decision in the bankruptcy court, coupled with $2,098.87 in judgment interest. The remaining $30,971.25 of the fee award is VACATED. On all other grounds, we AFFIRM.