NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted October 23, 2015[*]
Decided October 23, 2015

**Before**

MICHAEL S. KANNE, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 15-1824

| | |
|---|---|
| MICHAEL HEBENSTREIT, Trustee<br>    *Plaintiff-Appellee*,<br><br>    *v.*<br><br>RAJWINDER KAUR ,<br>    *Defendant-Appellant*. | Appeal from the United States District Court for the Southern District of Indiana, Indianapolis Division.<br><br>No. 1:14-cv-00943-LJM-DKL<br><br>Larry J. McKinney,<br>*Judge*. |

**O R D E R**

After Harbhupinder Bains filed a Chapter 7 bankruptcy petition, the trustee filed an adversary complaint against Bains's ex-wife, Rajwinder Kaur, to recover corporate stock that Bains had transferred to her before he sought bankruptcy protection. This appeal focuses on two issues. The first is the bankruptcy court's finding that Bains transferred the stock to Kaur to defraud creditors. The second is the court's order that

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2)(C).

Kaur must pay to the bankruptcy estate the stock's value at the time of transfer, rather than just return the stock. Both rulings are proper, so we affirm.

The principal asset underlying the stock is a "travel plaza" (a gas station, convenience store, and Subway franchise) in Indiana. Bains, his acquaintance Ashok Bhargava, and Ashutosh Corporation (then owned equally by Bains and Bhargava) bought the plaza in 2005. Ashutosh later acquired a third partner, Harbhajan Bajwa, but Bains became its majority shareholder in 2007 after purchasing Bajwa's shares. Around this time Kaur began working at the plaza. This angered Bhargava who in April 2008 complained to Bains that wives, as non-owners, could not work at the plaza. Bains replied that, because he owned 52% of the partnership's assets, Kaur could work there.

Bains eventually transferred his interest in the plaza's assets to Kaur; in the bankruptcy court the parties hotly contested whether he did so before or after September 2008. That is the month that Bains crashed his car into a tree, severely injuring a passenger who sued Bains for over $300,000 in uncovered medical expenses. Kaur testified that Bains conveyed his interest to her in March 2008, six months before the collision. She cited to a transfer agreement purportedly signed in March and notarized by a former employee. She added that she always should have been the majority shareholder anyway because she provided a significant amount of the purchase money in 2005. The trustee argued that Bains did not assign his interest until December. He cited to a different version of the agreement, signed in December and filed then with the county recorder. The transfer was fraudulent, the trustee continued, because it left Bains insolvent when he knew he was facing a hefty lawsuit from the car crash.

The bankruptcy court found Kaur not credible and ruled that Bains fraudulently transferred his interest to Kaur in December. It gave several reasons. First, the March-dated agreement included information that Bains testified he did not learn until December. Second, if he had transferred his interest to Kaur in March, he would have told Bhargava about it in April when responding to Bhargava's objection that Kaur was a non-owner spouse working at the plaza. Third, previous sales, like the one involving Bajwa, had been memorialized in a formal resolution, but the supposed March transaction was not. The court also ruled that, by conveying his interest in December, after he injured the car passenger, Bains committed actual fraud (an "intent" to harm creditors, *see* IND. CODE § 32-18-2-14(1)) and constructive fraud (a transfer for less-than-fair value that leaves the debtor insolvent, *see* IND. CODE § 32-18-2-14(2)). In finding actual fraud, the court observed that Kaur and Bains did not give a consistent, innocent explanation for the transfer. Instead, they "doctored" the transfer agreement to

"to make it look as [if it] occurred months before it actually did." In finding constructive fraud, the court noted that the transfer left Bains insolvent. The transfer also did not occur in the usual course of business: Even after the transfer, Bains remained president of Ashutosh and received dividends, and any funds that Kaur said she had contributed to buy the travel plaza did not match the value of the shares at the time of the transfer to her.

Based on the fraud, the bankruptcy court concluded that the transfer should be avoided. At Kaur's request, the court determined whether she must pay to the bankruptcy estate the value the shares held at the time Bain transferred them to her or whether she could simply return the stock. The court ruled that, because the stock's current value had depreciated significantly (because of environmental issues with the gas station and the loss of the Subway franchise), Kaur must pay the value of the shares at the time of transfer. It then credited the trustee's expert's testimony about the stock's value back then. The district court affirmed the bankruptcy court's judgment.

On appeal Kaur first contends that the bankruptcy court erred in finding that Bains transferred the stock fraudulently. We review rulings of law de novo, s*ee First Weber Grp., Inc. v. Horsfall*, 738 F.3d 767, 776 (7th Cir. 2013), but Kaur principally challenges only findings of facts, which we review for clear error. *Id*. She again insists that the transfer occurred in March, before Bains injured his car passenger. The bankruptcy court, however, permissibly found that Bains and Kaur did not credibly testify that the transfer occurred in March. Kaur cites no evidence that refutes the several reasons the court gave for rejecting her March story and its finding that she and Bains "doctored" a March transaction date to avoid paying a potential judgment. The court also reasonably rejected Kaur's defense that she supplied money to purchase the plaza in 2005, finding that even if she did, the stock transfer over-compensated her and left Bain insolvent. Therefore the court reasonably found fraud. *See In re Marcus-Rehtmeyer*, 784 F.3d 430, 436–37 (7th Cir. 2015); *First Weber Grp., Inc.*, 738 F.3d at 776.

Kaur raises a legal argument about the fraud ruling, but it is groundless. She asserts that because a state court had decided, in a shareholder suit involving Bains, Kaur, and Bahargava, that Kaur owned corporate shares, the bankruptcy court was estopped from relitigating that decision. (We do not have the state-court judgment in the record.) Although a state-court judgment can have preclusive effect in bankruptcy proceedings, *see In re Davis*, 638 F.3d 549, 553–54 (7th Cir. 2011); *In re Catt*, 368 F.3d 789, 792–93 (7th Cir. 2004), the judgment here did not. Indiana law bars relitigation of an issue only when "the matter at issue was, or might have been, determined in the former

suit," *see Haber v. Biomet, Inc.*, 578 F.3d 553, 556 (7th Cir. 2009). But the issue in the bankruptcy court was not stock ownership; in fact, the court treated Kaur as owner before it avoided the transfer to her. The issue in the bankruptcy court was whether Bain made Kaur a stock owner in order to defraud creditors. Because that issue was not relevant to the state-court case, the trustee was not estopped by that court's rulings.

Next Kaur argues that the bankruptcy court erred in framing relief. She should not, she contends, have to pay the value of the shares when she received them; she need only return the shares to the bankruptcy estate. But to restore a bankruptcy estate to its pre-transfer financial condition, the bankruptcy court has discretion to award the trustee the actual property *or* its pre-transfer value. *See In re Taylor*, 599 F.3d 880, 889–90 (9th Cir. 2010); *In re Trout*, 609 F.3d 1106, 1111–13 (10th Cir. 2010). Here, the bankruptcy court reasonably determined that returning the stock would not restore the estate's pre-transfer financial condition because post-petition events significantly decreased the shares' value. And Kaur gives us no valid reason to disturb the "great weight" accorded to a district court's assessment of the stock-valuation testimony of the trustee's expert. *Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1069 (7th Cir. 2013).

Finally, Kaur argues the trustee's complaint was untimely. But she forfeited this issue by failing to raise it in the bankruptcy court. *See In re Sokolik*, 635 F.3d 261, 268 (7th Cir. 2011); *Matter of Weber*, 25 F.3d 413, 415 (7th Cir. 1994).

Accordingly, the judgment is AFFIRMED.