In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-1891

IN RE: CAROL A. MARCUS-REHTMEYER,

*Debtor-Appellee,*

APPEAL OF MARK A. JACOBS and
CHIVALRY CONSULTING, INC.,

*Creditors-Appellants.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 13-C-3919 — **Gary S. Feinerman**, *Judge.*

ARGUED NOVEMBER 10, 2014 — DECIDED APRIL 28, 2015

Before WOOD, *Chief Judge,* and ROVNER, and HAMILTON, *Circuit Judges.*

ROVNER, *Circuit Judge.* After a contractual relationship went sour, an Illinois state court ordered the defendant-appellee, Carol A. Marcus-Rehtmeyer to pay approximately $168,000 dollars to the plaintiff-appellants, Mark Jacobs and Chivalry Consulting, Inc. (Chivalry). When she failed to do so, Chivalry issued a citation to discover assets under Illinois

law, but before the matter was resolved, Marcus-Rehtmeyer filed a Chapter 7 petition for bankruptcy. Chivalry appeared in the bankruptcy court to object to the discharge of the debt owed to them, claiming that Marcus-Rehtmeyer had concealed her assets and income during the citation proceedings. The bankruptcy court denied Chivalry's objection and the district court affirmed the rulings of the bankruptcy court. Chivalry appeals the district court's ruling, and because we conclude that Marcus-Rehtmeyer concealed assets with the requisite intent, we reverse.

## I.

Chivalry hired Marcus-Rehtmeyer to develop and manufacture a fantasy board game that Jacobs invented. The two parties entered into a contract, and Chivalry paid Marcus-Rehtmeyer over $128,000, but the relationship deteriorated and Marcus-Rehtmeyer never produced the game. Chivalry sued Marcus-Rehtmeyer in Illinois state court for breach of contract and won a judgment of $168,331.59, plus a later award of $621.25 in costs, but Marcus-Rehtmeyer never paid. Consequently, on October 12, 2010, Chivalry issued a citation to discover assets. The citation commanded Marcus-Rehtmeyer to appear in court and stated:

> YOU ARE COMMANDED to produce at the examination (bring with you) all books, papers, or records in your possession or over which you have control, which may contain information concerning the property or income of, or indebtedness due judgment debtor and: see attached RIDER TO CITATION TO DISCOVER ASSETS

> **You are prohibited** from making or allowing any transfer or other disposition of, or interfering with, any property not exempt from the enforcement of a judgment therefrom, a deduction order or garnishment, belonging to the judgment debtor or to which he or she may be entitled or which may thereafter be acquired by or become due him or her, and from paying over or otherwise disposing of any moneys not so exempt which are due or to become due to the judgment debtor, until further order of the court or the termination of the proceeding, whichever occurs first.

(R. 356) (emphasis in original). The citation followed the requirements of Illinois Supreme Court Rule 277 and Section 2-1402 of the Illinois Code of Civil Procedure.

The rider to the citation required that Marcus-Rehtmeyer produce the following documents:

> Any and all documents, whether printed, handwritten, typed, drawn, sketched, printed or recorded by any physical, mechanical, magnetic, optical, electronic, or electrical means whatsoever, pertaining to, relating to and/or referring to *any and all real property, personal property, tangible property and intangible property in which the Judgment Debtor has or claims an ownership interest, or had or claimed an ownership interest in within the last five years,* whether individually, jointly,

> severally, beneficially, contingently or expect-
> antly and ***any and all real property, personal
> property, tangible property and intangible
> property owned by any trust, corporation,
> partnership, limited partnership, limited lia-
> bility partnership, sub-chapter "S" corpora-
> tion, joint venture, sole proprietorship or other
> such entity in which the Judgment Debtor has
> or claims an ownership interest, or in which it
> had or claimed an ownership interest in within
> the last five years***, whether individually, joint-
> ly, severally, beneficially, contingently or ex-
> pectantly.

(R. 357) (emphasis in original).

At the citation examination on November 4, 2010, Mar-
cus-Rehtmeyer testified that she had no ownership interest
in any real estate whatsoever, and specifically, that she was
not a signatory to the mortgage on her residence in
Wheaton, Illinois. She also testified that she had no owner-
ship interest in any securities, stocks, bonds or other such
assets. She denied that she was a shareholder of a corpora-
tion named Lorac & Cire, Inc., stating that she had owned
50% of the shares of Lorac & Cire at the time the corporation
was formed, but that her shares were given up for payment
to her attorney. Furthermore, she testified that she did not
have an ownership interest in any office or electronic
equipment, including computers. Finally, she testified that
she no longer had a personal checking account, that she
closed it about a month prior to the citation examination,
and that she had no interest in any savings accounts.

As for the required documents, the only documents Marcus-Rehtmeyer brought with her in response to the document request were copies of her individual tax returns for the years 2006-2009. Consequently, Chivalry continued the citation and filed a motion to compel Marcus-Rehtmeyer's production of the required documents. On December 7, 2010, the state court ordered Marcus-Rehtmeyer to produce copies of all documents described in the citation and, if she had no such documents, an affidavit as to that fact.

As of January 4, 2011, Marcus-Rehtmeyer still had not complied. Chivalry filed a renewed motion to compel, and the next day the state court ordered her to produce all the documents required by the citation order by January 13, 2011, and continued the matter until February 10, 2011. On January 13, 2011, Marcus-Rehtmeyer produced a few documents responsive to the rider. On February 10, 2011, the state court again ordered Marcus-Rehtmeyer to produce all documents responsive to the citation by February 24, 2011. On February 24, Marcus-Rehtmeyer filed a response in which she stated that there were no documents relating to checking and savings accounts and that she had no mortgage or deeds of trust documents because she held none.

On May 24, 2011, Chivalry filed a motion for a rule to show cause arguing that Marcus-Rehtmeyer did not produce all of the documents required of her, that she appeared to be concealing documents about bank accounts and wages, that she had provided inaccurate information, and had made it difficult to access information relating to her assets. The court scheduled a hearing for June 30, 2011, but the day before the hearing, on June 29, 2011, Marcus-Rehtmeyer skirted the hearing by filing a bankruptcy petition pursuant to

Chapter 7 of the United States Bankruptcy Code, seeking to discharge all of her debts.

Some documents filed in the bankruptcy court directly conflicted with information Marcus-Rehtmeyer had provided in the state court pursuant to the citation. For example, in the bankruptcy court, Marcus-Rehtmeyer stated that she held real property—her personal residence in Wheaton, and that she and her husband were co-debtors on two mortgages on the property held by Chase Bank. She also listed as personal property, "100% of the common stock of Lorac & Cire, Inc.," and $500 worth of "desks, monitors, computer, and filing cabinets." Finally, her Statement of Financial Affairs filed with the bankruptcy court listed income received as $13,541.65 in 2010 and $25,000.00 in 2011, both from SciTech Museum.

Chivalry appeared in the bankruptcy court to object to Marcus-Rehtmeyer's discharge of her to debt to Chivalry, pursuant to 11 U.S.C. § 727(a)(2)(A) which disallows a discharge where "the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred … or concealed, or has permitted to be transferred … or concealed property of the debtor, within one year before the date of the filing of the petition." Specifically, Chivalry argued that Marcus-Rehtmeyer had concealed information relating to income and property in (1) her ownership of her Wheaton residence, (2) her ownership interest in Lorac & Cire, Inc., (3) her income from employment at SciTech museum; and (4) her ownership interest in computers and electronic equipment. The bankruptcy court conducted a trial on Feb-

ruary 14, 2013, and denied Chivalry's objections the next day.

During the bankruptcy trial, Marcus-Rehtmeyer testified that when she and her husband acquired the Wheaton residence, they did so as joint tenants. Marcus-Rehtmeyer admitted that previously, during the citation examination, she had stated that she did not have an ownership interest in any real estate and that she was not a signatory to the mortgage on her residence. She also admitted that she had not produced any documents pursuant to the citation order demonstrating who was, in fact, a signatory on the mortgage. To explain the discrepancy between her testimony at the bankruptcy proceedings and the citation proceedings, she stated that when she and her husband refinanced the property in 2008, she believed that only her husband had signed the refinancing documents. She further alleged that when she called Chase Bank to inquire about the mortgage, a representative of the bank refused to speak with her about it, claiming that only her husband was named on the account.

The bankruptcy court accepted Marcus-Rehtmeyer's explanation and held that Chivalry failed to establish by a preponderance of the evidence that Marcus-Rehtmeyer concealed the property with an intent to defraud. It did so, in part, because Marcus-Rehtmeyer's lawyer had written to Chivalry on May 12, 2011, stating that he had previously provided the deed to the Wheaton property to Chivalry's counsel.[1] Chivalry denied receiving it, but in any event, the

---

[1] There is contradictory evidence as to whether Marcus-Rehtmeyer did indeed provide the deed. In her brief, Marcus-Rehtmeyer claims, "Ms. Koleta, one of Chivalry's attorneys, in her testimony, admitted that it

bankruptcy judge accepted the May 12, 2011 letter as evidence that Marcus-Rehtmeyer did not have an intent to defraud and that Chivalry, had it not received the deed, had notice that such a deed existed and was publicly available.

Marcus-Rehtmeyer also admitted during the bankruptcy trial that despite stating at her citation examination that she did not own shares of Lorac & Cire, she did, in fact, own 100% of the common stock. She explained the discrepancy by noting that, at the time of the citation examination, she earnestly believed she did not own shares of the common stock of Lorac & Cire because she transferred them to her attorneys as payment for legal services. Her attorney later revealed, however, that Marcus-Rehtmeyer assigned the shares as collateral for a promissory note given to her attorneys, and not as an outright transfer.

According to Marcus-Rehtmeyer's filings, immediately following the November 4, 2010 deposition for the citation, Marcus-Rehtmeyer's attorney, Douglas Tibble, questioned the accuracy of her answers about her ownership interest in her house and the Lorac & Cire stock. He promised Marcus-

---

was possible that the deed was tendered to her in open court." Appellee Brief at 19 (citing R. 952, p. 23). The page she cites of the record does not support that statement. In fact the pages that precede and follow the cited page indicate that Ms. Koleta testified that she did not receive a deed from Marcus-Rehtmeyer, and that all documents received by the firm were immediately Bates stamped and filed in a manner designed to prevent loss and misplacement. When pressed as to whether the Bates stamping would guarantee that a document could not be misplaced or mislaid, Ms. Koleta admitted that it was not a 100% guarantee. The only evidence that Marcus-Rehtmeyer provided a deed is from another letter dated May 11, 2011 in which her attorney, Douglas Tibble, claims that he previously sent the deed to the plaintiffs. (R. 752).

Rehtmeyer that he would research the matter and send Chivalry any documents he had. On March 3, 2011, Tibble filed a formal response to the citation production request stating "Rehtmeyer owns 50% of the shares of Lorac & Cire, Inc. The stock certificates is (sic.) currently cannot be located. Rehtmeyer owns 100% of the shares of Rehtmeyer, Inc. The stock certificate is (sic) currently cannot be located." (R. 742).

The bankruptcy court credited Marcus-Rehtmeyer's testimony that she believed she had transferred her shares of the stock to her attorney, Tibble, as payment for unpaid attorney's fees. The bankruptcy court noted that Marcus-Rehtmeyer's formal response of March 3 (*see* supra) clearly stated that Marcus-Rehtmeyer owned the shares. It further noted that Tibble's March 25, 2011 letter had put Chivalry on "inquiry notice" regarding her ownership interest in the stock shares, although that explanation is harder to grasp. The March 25, 2011 letter stated only that Tibble claimed he "provided to you in court all of the corporate books, records and documents we have of Lorac & Cire, Inc." (R. 750). The bankruptcy court accepted this disclosure as sufficient despite the fact that it came long after the original November 4, 2010 deadline, and after Marcus-Rehtmeyer had ignored orders requiring the documents or information by December 21, 2010, January 13, 2011, and February 24, 2011.

The district court, when reviewing the bankruptcy court, concluded,

> [A]fter reviewing the pertinent portions of the record, this court finds that the bankruptcy court's credibility findings in Rehtmeyer's favor and its bottomline conclusion that she did not subjectively intend to hinder, delay, or de-

fraud Plaintiffs with respect to the Wheaton property and the Lorac & Cire shares, while not the *only* permissible conclusion that a rational factfinder could have drawn, was a permissible conclusion.

*In re Marcus-Rehtmeyer*, No. 13 C 3919, 2014 WL 1244055, at * 3 (N.D. Ill., March 24, 2014) (emphasis in original), citing *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 575 (1985) ("When a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error."); *In re Generes*, 69 F.3d 821, 825 (7th Cir. 1995) (declining to disturb the credibility determinations of the bankruptcy court where the debtor presented no extrinsic evidence that would undermine the trial court's decision to choose the creditor's version of events over the debtor's); *In re Pearson Bros. Co.*, 787 F.2d 1157, 1162 (7th Cir. 1986) ("the bankruptcy judge's determination ... was based upon the conflicting testimony of two witnesses and must be upheld if the testimony accepted by the trier of fact was coherent, facially plausible and uncontradicted by documentary or objective evidence").

On appeal, we apply the same standard as the district court, reviewing the bankruptcy court's factual findings for clear error and the legal conclusions of both the bankruptcy court and the district court de novo. *In re Mississippi Valley Livestock, Inc.*, 745 F.3d 299, 302 (7th Cir. 2014). Whether a debtor possessed the requisite intent to defraud is a question of fact, which is subject to the "clearly erroneous" standard

of review. *In re Davis*, 638 F.3d 549, 553 (7th Cir. 2011). We review de novo, however, the lower courts' interpretation of state law. *James Michael Leasing Co. LLC v. PACCAR, Inc.*, 772 F.3d 815, 820 (7th Cir. 2014).

The district court's lukewarm acceptance of the bankruptcy court's findings is no surprise. Given the contradictory revelations about the assets in the citation versus the bankruptcy proceedings and the reticence of Marcus-Rehtmeyer to disclose relevant documents after repeated court orders, the district court's skepticism is well-founded. It seems that Marcus-Rehtmeyer's explanations would cause even the most forgiving of adjudicators to furrow his brow. Why, for example, would it take Marcus-Rehtmeyer from October until December to locate the deed to her house and forward it to Chivalry? And when Marcus-Rehtmeyer testified that she transferred her stock in Lorac & Cire to her attorney, why would her attorney to whom she allegedly transferred those very stocks, and who was sitting at the very same table at the examination, not have immediately corrected the mis-information, or at the very least called a recess to investigate? And why would it have taken him from November 4, 2010, until March 3, 2011 (and four court orders) to file an answer clarifying that Marcus-Rehtmeyer did, in fact, own the shares of Lorac & Cire stock. Marcus-Rehtmeyer's arguments are hard to digest. Nevertheless, the district court's respect for the bankruptcy court's credibility assessments and factual determinations was legitimate. This court might view with skepticism Marcus-Rehtmeyer's confusion about whether she owned the Wheaton property and the Lorac & Cire shares, but the bankruptcy court heard all of the testimony and was in the best position to assess Marcus-Rehtmeyer's credibility, and it certainly was not outside

of the realm of reason that Marcus-Rehtmeyer was confused about the ownership of her home and the stocks from her defunct company. The district court was correct to defer to the bankruptcy court's determination of credibility and factual findings. *First Weber Group, Inc. v. Horsfall*, 738 F.3d 767, 776 (7th Cir. 2013).

During the bankruptcy trial, Marcus-Rehtmeyer also admitted that information in her bankruptcy petition regarding personal property such as computer equipment and office furniture conflicted with information she provided in her citation examination. In the latter, she specified that she owned no such equipment but the bankruptcy petition listed $500 worth of such items. She testified that the equipment listed on the bankruptcy schedules was that of Rhetmeyer, Inc., a now defunct corporation. The bankruptcy court found that Marcus-Rehtmeyer's testimony that the equipment listed on the bankruptcy schedules belonged to Rehtmeyer, Inc. was consistent with her testimony at the citation examination. The district court did not make any of its own specific findings regarding the computer equipment, and Chivalry does not pursue this matter on appeal. *See* Appellants' Brief at 22.

Finally, the bankruptcy court explored the question of Marcus-Rehtmeyer's salary from her employment as acting director of SciTech Museum. Marcus-Rehtmeyer began working for SciTech in 2010. She stated in her testimony before the bankruptcy court that her annual salary was $50,000, and that she received $13,541.65 from SciTech in 2010, $25,000 in 2011, and that the compensation was paid by check in various installments. This testimony was consistent with the disclosures she made in her Statement of Financial

Affairs in her bankruptcy petition. Neither party seems to be able to articulate when Marcus-Rehtmeyer began her employment, when SciTech was obligated to pay her, and on what dates they did, in fact, pay her. Ordinarily this type of employment income would be the first and easiest target for discovery in a citation to discover assets. The fact that the details about such an obvious and traceable asset, such as a check, are still unknown at this point in the litigation (after traveling through state court and three layers of federal courts) in and of itself certainly suggests that Marcus-Rehtmeyer was not forthcoming in disclosing her assets. We need not rely on this alone, however, to support a finding that Marcus-Rehtmeyer concealed this asset with the intent to hinder, delay or defraud her creditors.

Marcus-Rehtmeyer testified at the bankruptcy hearing that she opened a new bank account and deposited the checks from SciTech into that account. (R. 828). She also testified that she opened the bank account "around the date that [she] first got a check." *Id.* She later testified that she opened the account with "Old Second Bank." (R. 830). Marcus-Rehtmeyer did not produce any documents at the citation examination on November 4, 2010, reflecting any agreements with SciTech, any receipts for payment, any cancelled checks, or any bank accounts. Nor did she ever produce any other documents of any kind that reflected her income from SciTech. Marcus-Rehtmeyer testified that she received a W-2 from SciTech sometime in 2011, but never produced a copy of that W-2.

Nevertheless, the bankruptcy court concluded that Chivalry did not meet its burden of proving by a preponderance of the evidence that Marcus-Rehtmeyer intended to conceal

her employment with SciTech. The bankruptcy court accept-
ed Marcus-Rehtmeyer's testimony that she could not recall
when payments were made to her and how much those
payments were, and concluded, therefore, that it was possi-
ble that, at the date of the citation proceeding, she had not
received any income from SciTech at all.[2] The bankruptcy
court also accepted Marcus-Rehtmeyer's testimony that, alt-
hough SciTech agreed to pay her an annual salary of $50,000,
the museum was often short on funds and therefore did not
pay her all of her compensation for 2010 and did not pay her
bi-weekly as it was supposed to. The bankruptcy court con-
cluded that Chivalry had failed to produce evidence that she
received any payments before the November 4 citation ex-
amination, and that it therefore failed to establish by a pre-
ponderance of the evidence that Marcus-Rehtmeyer con-
cealed her employment with SciTech.

The district court agreed with the bankruptcy court's
conclusions, also limiting its review to what assets Marcus-
Rehtmeyer held at the time of her citation examination. The
district court stated, "The evidence did not compel the bank-
ruptcy court to conclude that Rehtmeyer received income

---

[2] We note that at the time of the citation examination there were only 57
days (8 weeks) remaining in 2010. At a salary of $50,000 per year, a total
payment of $13,541.65 would indicate that Marcus-Rehtmeyer had
worked for 14 weeks in 2010. If she was, in fact, underpaid as she claims,
then it is likely she worked more than 14 weeks. Although it was certain-
ly possible that SciTech made all of its payments in the last 57 days of the
year, it seems unlikely. And in any event, if Marcus-Rehtmeyer was
working during that time and SciTech owed her money, Marcus-
Rehtmeyer was required to disclose that expectant interest in response to
the citation to discover assets. *See* R. 357.

**before** her citation examination on November 4, 2010." *Marcus-Rehtmeyer*, 2014 WL 1244055 at *4 (emphasis ours).

Marcus-Rehtmeyer, however, most certainly had a duty to disclose any payment she received from SciTech whether she received it before or during the pendency of the citation. Indeed, the very purpose of a citation to discover assets is to allow a winning litigant to whom money is owed to find assets when the losing party refuses to pay. 735 ILCS 5/2-1402(a); *Shipley v. Hoke*, 22 N.E.3d 469, 471 (Ill. App. 4 Dist., 2014) ("Supplementary proceedings allow a judgment creditor to examine the judgment debtor or third parties to discover assets belonging to the judgment debtor that may be used to satisfy the judgment. Such proceedings are commenced by the service of a citation—issued by the clerk at the judgment creditor's request—upon the judgment debtor or a third party.") It would be nonsensical then, to allow a judgment debtor, like Marcus-Rehtmeyer, to avoid the discovery of assets by merely stating that she could not recall precisely when she received particular assets, or that she did not receive the assets by the time the citation was first issued.

The nature of the proceedings themselves dictate that Marcus-Rehtmeyer had a continuing duty to disclose her assets up until the time that the citation was terminated. First, the proceedings begin at the moment the clerk issues the service of citation:

> A judgment creditor … is entitled to prosecute supplementary proceedings for the purposes of examining the judgment debtor or any other person to discover assets or income of the debtor not exempt from the enforcement of the

> judgment … and of compelling the application of non-exempt assets or income discovered toward the payment of the amount due under the judgment. A supplementary proceeding shall be commenced by the service of a citation issued by the clerk.

735 ILCS 5/2-1402(a).

Once the citation is served on the judgment debtor, a lien is created in favor of the judgment creditor for all personal property that the debtor has **or acquires** by the time the court issues a disposition:

> (m) The judgment or balance due on the judgment becomes a lien when a citation is served in accordance with subsection (a) of this Section. The lien binds nonexempt personal property, including money, choses in action, and effects of the judgment debtor as follows:

>> (1) When the citation is directed against the judgment debtor, upon all personal property belonging to the judgment debtor in the possession or control of the judgment debtor **or which may <u>thereafter be acquired or come due</u> to the judgment debtor to the time of the disposition of the citation**.

735 ILCS 5/2-1402(m) (emphasis ours). The wording of the citation itself also made clear that any interest in assets whether contingent or expectant, must be disclosed. (R. 357) ("Any and all documents … pertaining to, relating to and/or referring to any and all real property, personal property,

tangible property, intangible property, in which the Judgment Debtor has or claims an ownership interest … whether … contingently or expectantly.") Furthermore, any transfers of funds after receipt of the citation violates the citation lien unless the court gives permission for disbursement. 735 ILCS 5/2-1402(f). *City of Chicago v. Air Auto Leasing Co.*, 697 N.E.2d 788, 791 (Ill. App. Ct. 1998). Thus it is of no moment that Marcus-Rehtmeyer may not have had assets or known the extent of them at the date of the citation examination. Both the bankruptcy court and the affirming district court made a legal error in the application of Illinois law by looking only to what Marcus-Rehtmeyer owned or knew about at the date of the citation examination. Both courts erred, therefore, by accepting her defense that because SciTech did not pay her all of her compensation in 2010 and she could not recall when SciTech paid her, she may not have been paid by the date of the citation examination on November 4, 2010. The lower courts should have considered all payments made to Marcus-Rehtmeyer until the citation expired. Marcus-Rehtmeyer cannot avoid her legal obligation to disclose documents by claiming ignorance of the law.

Marcus-Rehtmeyer argues that even if she had such a continuing obligation, Chivalry cannot prove that she had the requisite intent to hinder, delay or defraud a creditor. *See* 11 U.S.C. § 727(a)(2)(A). Intent is a question of fact, but we think that even under the clearly erroneous standard of review, no reasonable fact-finder could have found that Marcus-Rehtmeyer did not have the intent to either hinder, delay, or defraud her creditor Chivalry. *See Davis*, 638 F.3d at 553. Marcus-Rehtmeyer asserts in her defense that she could not have known that she was required to disclose her SciTech income, as the only mention of "income" was in

small print on the first page of the citation and that a specific category for employment or income did not appear in the rider to the citation. She also claims that she was not asked any questions about her income or employment at her citation examination. Given the purpose and name of the "citation to discover assets," it belies reason to think that anyone, particularly a person represented by counsel, would think that she need not disclose employment or associated income as an asset. Moreover, how could Chivalry have asked Marcus-Rehtmeyer about her income from an employer it knew nothing about? Marcus-Rehtmeyer never disclosed any W-2 forms, contracts, agreements, checks or pay advices from SciTech. Although Marcus-Rehtmeyer stressed that she disclosed her tax returns from 2006 through 2009, she never disclosed her 2010 tax returns which were the most relevant for divulging monies paid by SciTech.

But if common sense did not dictate the disclosure, the explicit language of the citation surely did. The requirement to produce documents relating to property and income was not merely mentioned in fine print, as Marcus-Rehtmeyer argues, but appeared on the very face of the citation following the bold words, "**YOU ARE COMMANDED** to produce . . .records … concerning the … income" of the debtor. (R. 356). It is difficult to imagine a more broadly worded request than that on the face of the citation and the rider. The face of the citation requires "all books, papers or records in your possession or over which you have control, **which may contain information concerning** the … **income** of or indebtedness due the judgment debtor." (R. 356) (emphasis ours). The rider required

> Any and all documents, whether printed, handwritten, typed, drawn, sketched, printed or recorded by any physical, mechanical, magnetic, optical, electronic, or electrical means whatsoever, pertaining to, **relating to and/or referring to any** and all real property, **personal property**, tangible property and **intangible property** in which the Judgment Debtor **has or claims an ownership interest**, or had or claimed an ownership interest in within the last five years, **whether** individually, jointly, severally, beneficially, **contingently or expectantly**.

(R. 357) (emphasis ours). Furthermore, the specific examples in the rider included not only federal and state income tax returns, including 1099 and W-2 forms, but also commercial paper, which would have included the checks she received from SciTech.[3] Finally, the rider specifically stated "Those documents include, but are not limited to or by, the following and any and all documents pertaining to, referring to, relating to, evidencing and/or supporting the following:" (R. 357). Marcus-Rehtmeyer was represented by counsel, a profession that well-understands the meaning of "including but not limited to" language.

Marcus-Rehtmeyer argues in her brief on appeal that at the close of her citation examination, when the matter was

---

[3] If Marcus-Rehtmeyer could not locate the checks, she could have requested copies of them from SciTech. There was no testimony that Marcus-Rehtmeyer made any attempt to find evidence of the checks or payment disbursed.

continued due to her failure to produce certain documents, the only documents requested thereafter "'that should have been produced' were records pertaining to Carol's account at American Chartered Bank, the mortgage on her house, and her car loan," and in a follow up conversation, a copy of a past judgment order entered in a case filed against her by American Express. Marcus-Rehtmeyer's Brief at 5. *See also id.* at 29-30. This argument is blatantly false. In a court order dated December 7, 2010, the court ordered Marcus-Rehtmeyer to produce "all documents described in the citations to said defendants by Dec 21, 2010. If there are no documents responsive to any specific request, defendants shall provide an affidavit as to that fact, also by Dec. 21, 2010." (R. 403).[4] The request was clear and yet that date came and went without compliance. After a renewed motion to compel, the court issued yet another order, on January 5, 2011, again ordering Marcus-Rehtmeyer to produce "all documents required by the citations" by January 13, 2011. (R. 404). And then, once again, in an order dated February 10, 2011, the court ordered Marcus-Rehtmeyer to produce "all documents responsive to their citations on or before February 24, 2011." (R. 405). Marcus-Rehtmeyer cites a letter from Chivalry's counsel to Marcus-Rehtmeyer's counsel claiming that the documents requested were limited to a named few. Once again this is false. The letter from Chival-

---

[4] The state court orders included in the record were neither signed nor dated. This court was able to retrieve the final signed and dated orders from the Circuit Court of DuPage County, which are identical to the orders in the record in all manner, except that they also include the date and signature of the circuit court judge. The dates we use are from these final signed and dated orders.

ry's counsel to Marcus-Rehtmeyer's counsel requested that he forward within ten days, "[a]ll documents Carol Reht-meyer and Rehtmeyer, Inc. were required to produce at the citation proceeding per the Rider to the Citation to Discover Assets, including but not limited to, the following:" (R. 384). As we have just explained the citation and its rider required all documents related to income. Marcus-Rehtmeyer's argument that the documents requested were limited to a few specific documents about which Chivalry inquired at the examination is clearly and unequivocally incorrect.

The citation could not have been more clear that it required federal and state tax returns including W-2 and 1099 forms, yet Marcus-Rehtmeyer never disclosed her W-2 forms or any other documentation that would have disclosed the SciTech income and what became of it, despite the fact that she testified that she indeed received a W-2 for 2010 sometime in 2011. (R. 891-92).[5] Recall that the citation to discover assets was issued on October 12, 2010 and terminated when she filed bankruptcy on June 29, 2011. We can assume, based on an employer's legal obligation, that she received the W-2 by the end of January 2011, but in any event, surely she had

---

[5] The bankruptcy court stated in its oral opinion, that Marcus-Rehtmeyer "did not recall receiving a W-2 or 1099 form for income tax purpose. This statement, however, is incorrect. At the bankruptcy trial, Marcus-Rehtmeyer testified as follows:

Q (by counsel for Chivalry): When did you get a W-2 from SciTech?

A (by Marcus-Rehtmeyer): It was after the next year, so …

Q: Sometime in 2011?

A: Yes

(R. 891-92)

it by the time the citation proceedings terminated at the end of June 2011.

Marcus-Rehtmeyer did not disclose assets from SciTech at the citation examination; she did not do so after a motion to compel was filed on December 3, 2010; she did not do so after the court subsequently, on December 7, ordered her to produce all documents; she did not do so after a second motion to compel and subsequent order on January 5, 2011; nor did she do so after the court issued a nearly identical order on February 10, 2011, which clearly would have encompassed any assets she obtained in 2010. She did not do so at any time before the citation terminated with the filing of the bankruptcy petition.

It is uncontroverted that Marcus-Rehtmeyer had received or was receiving compensation from SciTech during the course of the citation to discover assets, and that she did something with that money. Marcus-Rehtmeyer also received $25,000 from SciTech in 2011. To the extent she received any of this income in the first six months of 2011 (and it seems logical to assume that SciTech would not have gone six months without paying her), these funds also should have been disclosed.

And although much ado was made of the Old Second National Bank and whether an account was opened there before or after the citation proceedings terminated, the fact of the matter is that there is no doubt that Marcus-Rehtmeyer received compensation from SciTech. She either deposited the money in some bank somewhere, or she transferred or disposed of the assets during the pendency of the citation proceeding in violation of state law and the state court's order which clearly stated,

> You are prohibited from making or allowing
> any transfer or other disposition of, or interfer-
> ing with, any property not exempt from the en-
> forcement of a judgment therefrom, a deduc-
> tion order or garnishment, belonging to the
> judgment debtor or to which he or she may be
> entitled or which may thereafter be acquired
> by or become due him or her, and from paying
> over or otherwise disposing of any moneys not
> so exempt which are due or to become due to
> the judgment debtor, until further order of the
> court or the termination of the proceeding,
> whichever occurs first.

(R. 356); 735 ILCS 5/2-1402(f).

The existence or not of an Old Second National Bank ac-
count is a distraction. Marcus-Rehtmeyer received money
but did not report it to the Circuit Court of DuPage County
and has not, to this day, accounted for it in any manner.

This should end the matter regarding the Old Second Na-
tional account, but even if we were to delve further, the evi-
dence of concealment only grows deeper. At the citation ex-
amination, Marcus-Rehtmeyer testified that she no longer
had a personal checking account, that it was closed about a
month prior to the examination, and that she had no interest
in any savings accounts. (R. 54-56). At the bankruptcy hear-
ing, Marcus-Rehtmeyer testified for the first time, that she
opened a checking account around the time she received her
first check from SciTech (sometime in 2010) and that she de-
posited the SciTech checks into her checking account (R.
828). This began the rigmarole about whether Marcus-
Rehtmeyer had an account at Old Second National Bank at

the time of the citation. During post-trial motions before the bankruptcy court, Marcus-Rehtmeyer filed two affidavits purporting to establish that she did not open an account at Old Second National Bank until one month after she filed her bankruptcy petition.

The Old Second National Bank account is a red herring and diverted attention away from the real questions which were (1) what happened to the money Marcus-Rehtmeyer received from SciTech that she stated she placed into a bank account around the time she received it and (2) why was it not disclosed? If Marcus-Rehtmeyer opened a checking account in 2010, she either did so before the citation examination on November 4, 2010, and failed to disclose its existence, or she opened it after November 4, 2010, but before the end of the year when her obligations to disclose under the citation were still ongoing. When and whether she opened a particular account at Old Second National Bank of Aurora is irrelevant. The only relevant question is why the income from SciTech, that all parties agree she earned, was not disclosed.

Concealment "includes preventing discovery, fraudulently transferring or withholding knowledge or information required by law to be made known." *In re Scott,* 172 F.3d 959, 967 (7th Cir. 1999). Marcus-Rehtmeyer had a duty to disclose the SciTech compensation. Our explanation above makes clear that the information was "required by law to be made known." *Id.* No reasonable debtor (and particularly one represented by counsel) could conclude that she need not disclose employment income in a citation to discover assets. For many debtors, employment income is the primary asset a creditor can reach. And if common sense eluded both Mar-

cus-Rehtmeyer and her counsel, the explicit language from the citation and the rider, and Illinois law on supplementary proceedings made clear that she had this duty. There can be no other conclusion than that Marcus-Rehtmeyer concealed her SciTech income with an intent to hinder, delay, or defraud Chivalry. *See* 11 U.S.C. § 727(a)(2)(A).

The district court, like the bankruptcy court before it, misunderstood the time frame to which it should have looked. The obligation to disclose assets continued during the entire pendency of the citation to discover assets. Both the district court and the bankruptcy court therefore misapplied state law by looking only at what assets the plaintiffs could prove that Marcus-Rehtmeyer held at the time of the November 4, 2011 citation examination, and clearly erred by concluding that Marcus-Rehtmeyer did not conceal her income from SciTech with the intent to hinder, delay or defraud its creditor, Chivalry. The judgment of the district court must be reversed.

## II.

Based on Marcus-Rehtmeyer's bankruptcy trial testimony about the Old Second National Bank, Chivalry filed posttrial motions. The first motion requested relief under Federal Rule of Civil Procedure 59(a)(2) and/or to amend the judgment under Rule 59(e) based on Marcus-Rehtmeyer's unequivocal trial admission that she had a bank account during the pendency of the citation. Chivalry's second motion requested leave to amend the complaint to add allegations relating to the new bank account so that the bankruptcy court

could sustain objections to the discharge on grounds alleged in the complaint.[6]

Marcus-Rehtmeyer filed a combined response to the post-trial motions, attaching her affidavit and one from Barbara Collette, an Operations Officer with Old Second National Bank of Aurora. The affidavits purported to establish that Marcus-Rehtmeyer did not open an account with that bank until July 28, 2011, one month after she filed her bankruptcy petition. The statements in the affidavits directly contradicted Marcus-Rehtmeyer's sworn testimony at the bankruptcy trial that she opened a checking account around the time she was paid by SciTech and deposited the checks therein, and that the account was at the Old Second National Bank. (R. 828, 830). Chivalry moved to strike the affidavits for the following reasons: (1) they were an impermissible attempt to re-open the proofs, (2) they were deficient under 28 U.S.C. § 1746, (3) they did not help Marcus-Rehtmeyer as she did not dispute that she received compensation from SciTech in 2010 in the form of checks, and (4) she did not dispute that she deposited those checks into a bank account.

Although the bankruptcy court agreed with Chivalry that the post-trial affidavits were deficient, it gave Marcus-Rehtmeyer the opportunity to re-file those affidavits to comply with 28 U.S.C. § 1746. The bankruptcy court did not address Chivalry's arguments that the affidavits were an im-

---

[6] A plaintiff may amend the complaint pursuant to Federal Rule of Civil Procedure 15(a) with leave of the court after a court has set aside or vacated a judgment under Rule 59(e) or 60(b). *Paganis v. Blonstein*, 3 F.3d 1067, 1072 (7th Cir. 1993).

permissible avenue to reopen the proofs nor did it allow Chivalry to respond to the allegations in the order.

Because we conclude that Marcus-Rehtmeyer, with the "intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has … concealed, or has permitted to be … concealed property of the debtor, within one year before the date of the filing of the petition" 11 U.S.C. § 727(a)(2)(A), we need not resolve the post-trial motions. As we have already explained, it was not critical to the disposition that the court decide whether or not Marcus-Rehtmeyer had an account with Old Second National Bank of Aurora during the pendency of the citation. It was enough to establish that Marcus-Rehtmeyer received assets from SciTech and that these assets should have been disclosed during the pendency of the citation. As we have concluded, they should have been.

Consequently, we reverse the judgment of the district court affirming the bankruptcy court's order that denied the plaintiffs-appellant's objection to the discharge of Marcus-Rehtmeyer's debt. We remand to the bankruptcy court with instructions to reverse its denial of the objection to the discharge.

REVERSED.